## No. 27019

**Weather Engineering and Manufacturing, Inc., a Colorado corporation v. Pinon Springs Condominiums, Inc., a Colorado corporation; Urban Development & Construction Corporation, a Colorado corporation; Transit Mix Concrete Co., a Colorado corporation; Foster Lumber Company, Inc., a Colorado corporation and Dovenmuehle, Inc., an Illinois corporation and Inter-State Plumbing & Heating, Inc., a Colorado corporation; Schmidt Construction, Inc.; Oldach Building Products Co.; K & W Distributors; Tom Tyme d/b/a Tom Tyme Cement Contractor; Gerald Weiss, d/b/a G. J. Weiss & Associates; Continental Drywall, Inc.; El Paso County Lumber Co.; I.C.G. Electric, Inc.; Adams Excavating, Inc.; Patrick J. Tighe; and Wayne J. Gottschalk, d/b/a Wayne's Roofing Company**

(563 P.2d 346)

Decided February 28, 1977. Opinion modified and as modified rehearing denied March 28, 1977.

496

Spurgeon, Haney & Howbert, P.C., Ronald M. Martin, for Weather Engineering and Manufacturing, Inc.

David C. Wells, for Foster Lumber Company, Inc.

Horn, Anderson & Johnson, Robert E. Johnson, for Transit Mix Concrete Co.

Asher, Kraemer & Kendall, Aldo G. Notarianni, for Dovenmuehle, Inc.

Cole, Hecox, Tolley, Edwards & Hero, Michael R. Bromley, for Inter-State Plumbing & Heating, Inc.

J. Royce Renfrow, P.C., for Schmidt Construction, Inc.

Quigley, Wilder & Palermo, P.C., Eugene F. Hart, for Oldach Building Products Company and Adams Excavating, Inc.

Blanchard, Grant & Rotole, Larry L. Grant, for K & W Distributors.

Richard E. Falcone, for Tom Tyme d/b/a Tom Tyme Cement Contractor.

Geddes, Sparks, MacDougall & McHugh, P.C., George C. Wing, for Gerald Weiss, d/b/a G. J. Weiss & Associates.

Walton, Robinson & Shields, Edward M. Shields, for Continental Drywall, Inc. and El Paso County Lumber Company.

Allen, Kordick & Wise, Frederic M. Wise, for I.C.G. Electric, Inc.

Kleinsmith and Johnson, Philip M. Kleinsmith, for Patrick J. Tighe.

William D. Schaneman, for Wayne J. Gottschalk, d/b/a Wayne's Roofing Company.

Grant, McHendrie, Haines and Crouse, P.C., Charles H. Haines, Jr., John Burrus, for amici curiae Fidelity National Title Insurance Company and Chicago Title Insurance Company.

Calkins, Kramer, Grimshaw & Harring, Victor Lee Wallace II, for amicus curiae Savings League of Colorado, Inc.

Berenbaum, Berenbaum, Weinberger & Susman, Joseph Berenbaum, for amicus curiae Colorado M.B.A.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

This case involves a priority dispute between Dovenmuehle, Inc., beneficiary of a deed of trust, and several mechanics' lien claimants. The El Paso County District Court held the interests of all lien claimants superior to the interest of the trust deed beneficiary and entered judgment with interest in favor of the lien claimants. We affirm the judgment decreeing the priority of the various interests but reverse the district court's award of interest.

Pinon Springs Condominiums, Inc., the project owner, hired Design Group Architects in August 1972 to prepare plans and specifications for the proposed construction project. Final working drawings were completed on March 5, 1974, although Design Group worked through August 1974.

On February 11, 1974, the general contractor for the project, Urban Development & Construction Corporation, orally contracted with Gerald J. Weiss for surveying services. Weiss began work on February 14, preparing a certified boundary survey. The perimeter lot boundaries were established and staked on February 18. The building corners were staked on March 22, 1974.

Having recieved approval of its plans, Pinon Springs executed a deed of trust in favor of Dovenmuehle, Inc., as security for the construction loan from Dovenmuehle. The deed was executed and recorded on March 15, 1974.

On March 20, 1974, the construction agreement between Pinon Springs, the owner, and Urban Development & Construction Corporation, as general contractor for the project, was reduced to writing. This contract was not recorded until April 9, 1974.

Work on the project was discontinued on August 7, 1974. To that date, Dovenmuehle had advanced $2 million in funds. El Paso County Lumber Company and Continental Drywall, Inc., two lien claimants, recorded their lien statements on August 21, 1974. Both lien statements were served on Pinon Springs on August 23. On that same day, Weather Engineering and Manufacturing, Inc., another lien claimant, brought a foreclosure action against Pinon Springs, Urban Development, Dovenmuehle, and the other lien claimants. With Pinon Springs in default on its loan obligations, Dovenmuehle foreclosed its deed of trust and acquired title to the property by public trustee's deed dated February 7, 1975.

In response to motions for summary judgment filed by several parties, the court on September 16, 1975, entered an "Order Granting Partial Summary Judgment." The court held that the survey by Weiss on

February 18, 1975, constituted commencement of the work and set that day as the priority date to which all valid mechanics' liens related back. Since Dovenmuehle recorded its deed of trust after that date, its interest was decreed to be junior to that of the lien claimants.

On October 22, 1975, the court entered its order and judgment in favor of all lien claimants except El Paso County Lumber and Continental Drywall. The court took under advisement the question of whether these two claimants had perfected their liens. The other claimants were awarded interest on their judgments, as follows: 6% from the date their accounts came due through June 30, 1975; 8% from July 1, 1975, to the date of the decree; and 12% thereafter. Finally, the court rejected Douvenmuehle's challenge to the constitutionality of the mechanics' lien statutes.

On November 7, 1975, judgment was entered in favor of El Paso County Lumber and Continental Drywall. The court ruled that as a result of the failure of Pinon Springs and Urban Development to execute and file a written contract prior to the date of commencement of work by Weiss on February 18, 1974, El Paso County Lumber and Continental Drywall were deemed to be principle contractors, relieving them of the requirement to serve notice of their liens on the project owner at or before filing thereof.

Dovenmuehle appeals the decision of the district court. Dovenmuehle contends (1) the district court erred in ruling that the interests of the mechanics' lien claimants were superior to its own interest under its deed of trust; (2) the court erred in ruling that El Paso County Lumber and Continental Drywall had perfected their liens; (3) Colorado's mechanics' lien statutes violate due process; and (4) the court erred in its interest awards.

I.

Section 38-22-106(1), C.R.S. 1973, provides:
"All liens established by virtue of this article shall relate back to the time of the commencement of work under the contract between the owner and the first contractor, or, if said contract is not in writing, then such liens shall relate back to and take effect as of the time of the commencement of the work upon the structure or improvement * * *."
Dovenmuehle argues that the mechanics' liens cannot relate back to February 18, 1974, because Weiss' survey and staking on that date did not constitute "commencement of the work upon the structure or improvement" under the statute quoted above.

This contention was recently answered contrary to appellant's position in *Bankers Trust Company v. El Paso Pre-Cast Co.*, 192 Colo. 468, 560 P.2d 457. There, we held the preliminary work of an architect or engineer [surveyor] does constitute "commencement of the work upon the structure or improvement." Since Dovenmuehle's deed of trust was recorded March 15, 1974, the court correctly found the lien claimants' interests senior to Dovenmuehle's interest.

## II.

Next, Dovenmuehle claims that El Paso County Lumber and Continental Drywall failed to perfect their liens. Specifically, Dovenmuehle contends that these claimants failed to comply with section 38-22-109(3), C.R.S. 1973,[1] which provides:

"In order to preserve a lien for work performed or materials furnished by a subcontractor, there must be served upon the owner or reputed owner of the property or his agent, at or before the time of filing with the county clerk and recorder the statement provided for in this section, a copy of such statement * * *."

It is undisputed that El Paso County Lumber and Continental Drywall did not serve Pinon Springs with lien statements until after the statements had been filed. The issue, therefore, is whether these two lien claimants were subcontractors, to whom this statute applies.

The district court ruled that they were not. The court first looked to section 38-22-108(1), C.R.S. 1973, which defines a principal contractor as "[e]very person given a lien by this article whose contract, either express or implied, is with the owner or reputed owner or his agent or other representative * * *."

Next, the court applied section 38-22-101(3), which requires that the contract (when the amount thereunder exceeds five hundred dollars) between the owner and a contractor be filed by the owner in the office of the county clerk and recorder before the work is commenced under the contract. That section further provides that if the contract is not so filed the labor and materials furnished by all persons shall be deemed to have been furnished at the personal instance of the owner.

■ The court correctly ruled that since the contract between Pinon Springs and Urban Development was not recorded until April 9, 1974, after Weiss had commenced work, El Paso County Lumber and Continental Drywall were deemed to have furnished their labor and materials at the personal instance of Pinon Springs, making them principal contractors and relieving them of the notice requirements of section 38-22-109(3). *Bulow v. Ward Terry & Co.*, 155 Colo. 560, 396 P.2d 232; *Barr v. Thompson*, 131 Colo. 347, 281 P.2d 1016; *Curtis v. Nunns*, 54 Colo. 554, 131 P. 403.

Dovenmuehle argues that section 38-22-101(3) requires only that a contract between the owner and contractor be filed "before the work is commenced under and in accordance with the terms of the contract." Therefore, it is argued, since the contract between Pinon Springs and Urban Development was not executed until March 20, 1974, Weiss' work in February 1974 could not have been under and in accordance with a

---

[1] Now section 38-22-109(3), C.R.S. 1973 (1976 Supp.).

nonexistent contract.

In its order of November 7, the district court answered Dovenmuehle's objection:

"The Court is further of the opinion and expressly finds that this oral agreement between the prime contractor, Urban Development & Construction Corporation, and Gerald J. Weiss was of such nature as to be the commencement of work under and in accordance with the terms of the contract between the owner and such general contractor which at such time had not yet been reduced to writing. * * * The fact that the contractor undertook such action to orally employ a surveyor on February 18, 1974, indicates to the Court that such date is the date on which work was commenced under agreements between the owner and the prime contractor."

The record supports the court's finding and therefore it will not be disturbed on review. *Burnford v. Blanning*, 189 Colo. 292, 540 P.2d 337.

Dovenmuehle also contends that since El Paso County Lumber and Continental Drywall stipulated that they were subcontractors or materialmen, they cannot be considered principal contractors. Of course, nothing in the mechanics' lien statutes alters the actual relationship between these claimants and Pinon Springs, the project owner. Rather, sections 38-22-101(3) and 38-22-108(1) merely provide that under certain circumstances present here contractors are treated as principal contractors in applying the notice requirements of section 38-22-109(3). A subcontractor's self-characterization cannot frustrate the operation of these statutes. *First Nat'l Bank v. McClure*, 163 Colo. 473, 431 P.2d 460.

### III.

Dovenmuehle argues next that Colorado's mechanics' lien statutes deny construction lenders due process of law. This assertion of unconstitutionality was rejected in *Bankers Trust Company v. El Paso Pre-Cast Co.*, *supra*, and we decline to reconsider it here.

### IV.

Effective July 1, 1975, the legislature raised the legal interest rate from 6% to 8%. Sections 5-12-101, 5-12-102, C.R.S. 1973 (1976 Supp.). Effective October 1, 1975, the legislature set a rate of 12% for established lien claims. Section 38-22-101(5), C.R.S. 1973 (1976 Supp.). The district court applied these changes in awarding interest on the lien claimants' judgments, as follows: 6% from the date their accounts came due through June 30, 1975; 8% from July 1,1975, to the date of the decree; and 12% thereafter.

The district court erred in applying the amendment to section 5-12-102 allowing 8% interest. By its terms, the act applied "to any judgment entered or indebtedness entered into or occurring on or after July 1, 1975." Colo. Sess. Laws 1975, ch. 61, section 4 at 258. A similar situation arose in *Bankers Co. v. International Co.*, 108 Colo. 15, 113 P.2d 656.

There, after the parties had executed a loan agreement, the legal rate of interest was reduced from 8% to 6%. In declining to apply the lower rate, we held that "the amendatory act would not operate retrospectively to affect a pre-existing transaction." *See Butler v. Rockwell*, 17 Colo. 290, 29 P. 458; section 2-4-202, C.R.S. 1973. Consequently, the 8% interest rate does not apply to the debts involved here, which were entered into or accrued before July 1, 1975.

■ Nor does the 8% rate apply to the judgment entered on October 22, 1975. Section 38-22-101(5), effective October 1,1975, provides as follows:

"All claimants who establish the right to a lien or claim under any of the provisions of this article shall be entitled to receive interest on any such lien or claim at the rate provided for under the terms of any contract or agreement under which the labor or material was supplied or, in the absence of an agreed rate, at the rate of twelve percent per annum."

This special statute, which is applicable to mechanic lien claims only, prevails over the general interest statute. Section 2-4-205, C.R.S. 1973. Under section 38-22-101(5), lien claimants whose claims arise after October 1, 1975, will be entitled to 12% interest from the date their claims become due, in the absence of any agreed interest rate between the claimants and the owners for which the labor or material was supplied. *York Plmb. v. Groussman Inv.*, 166 Colo. 382, 443 P.2d 986.

However, under the facts of this case, the lien claimants are entitled to 6% interest on their lien claims from the date their accounts were due until the date of the judgment and decree, and 12% thereafter. No problem of retroactivity arises in applying section 38-22-101(5) in this manner, since the judgment was entered October 22, 1975, after the statute's effective date. In all other respects, the judgment is affirmed.

The cause is remanded to the district court for further proceedings consonant with the views herein expressed.

MR. JUSTICE KELLEY does not participate.