A-1 PLUMBING AND HEATING COMPANY, INC., a Colorado Corporation, Meyers Heating and Air Conditioning, City Electric Company of Boulder, Plaintiffs-Appellees and Cross-Appellants,

and

Urban's Carpet Installation Service, Plaintiff-Appellee,

v.

The THIRTEENTH STREET CORPORATION, a Colorado Corporation, Defendant-Appellant and Cross-Appellee,

Miles D. Bradfield, Inc., Defendant-Appellee and Cross-Appellant,

Kelley-Moore Paint Company, Inc., Boulder Flooring and Tile Company, Mike Jenkins, and David Cleaver, Defendants-Appellees.

No. 78-723.

Colorado Court of Appeals, Div. III.

Jan. 17, 1980.

As Modified On Denial of Rehearings April 3, 1980.

Certiorari Granted Aug. 18, 1980.

Ronald J. Brotzman, Boulder, for plaintiff–appellee and cross–appellant A–I Plumbing and Heating Co.

Terry W. Scoby, David C. Wells, Boulder, for plaintiff–appellee and cross–appellant Myers Heating and Air Conditioning.

French & Stone, Robert W. Stone, Boulder, for plaintiff–appellee and cross–appellant City Elec. Co. of Boulder.

Madden & Strate, Robert McGahey, Jr., Denver, for plaintiff–appellee Urban's Carpet Installation Service.

Rothgerber, Appel & Powers, Ira C. Rothgerber, Richard K. Clark, Gregory B. Kanan, Denver, for defendant–appellant and cross–appellee The Thirteenth Street Corp.

Newcomer & Douglas, William A. Ahlstrand, Boulder, for defendant–appellee and cross–appellant Miles Bradfield, Inc.

Michael H. Bynum, Boulder, for defendant–appellee Kelley–Moore Paint Co., Inc.

Peter Rogers, Boulder, for defendant–appellee Boulder Flooring and Tile Co.

Brauchli & Jevons, Jack O. Jevons, Boulder, for defendants–appellees Mike Jenkins and David Cleaver.

SMITH, Judge.

This is an action for determination of the validity of mechanics' and materialmen's liens against land and a building owned by defendant Thirteenth Street Corporation. After a trial to the court, the court deter-

mined that several of the mechanics' and materialmen's liens were valid and entered judgment accordingly.

Thirteenth Street Corporation appeals, and the lien claimants cross–appeal. We affirm.

The land and building in question was a nightclub in Boulder, Colorado, operating under the name of Tulagi's Thirteenth Street Corporation leased the premises to Kenyon–Megill, Inc., under an unrecorded lease dated November 28, 1967. Under the terms of the lease, the tenant was required to maintain the premises in good repair and to obtain prior consent of the landlord before making any improvements or alterations costing more than $250. The lease provided that the tenant would assure that the terms of any contract entered into for improvements would require the persons making such alterations and all subcontractors to waive the right to file mechanics' liens or other liens against any interest of the landlord. Finally, the lease specifically provided that upon termination of the lease the tenant could remove any fixtures, equipment, or improvements procured by the tenant or which were owned by the tenant. The removal, however, was to be accomplished without damage to the premises or with any such damages to be repaired by the tenant.

In the spring and summer of 1974, Richard McCabe acting as a stockholder and managing agent of Kenyon–Megill, Inc. discussed with Ray Imel, president of Thirteenth Street Corporation, a change in the liquor license of Tulagi's from a license to dispense 3.2 beer to a general liquor license, and further discussed the possibility of extensive alteration of the interior of the building. Thirteenth Street orally consented to the change in the liquor license and the proposed remodeling.

In 1974, the tenant began to remodel the premises. An addition was made to the building, the upstairs was changed from a sandwich shop into a restaurant, and the seating capacity of the first floor was increased from approximately 350 to 499 persons. As part of the remodeling project, structural support walls were relocated, interior walls were removed and others were added, and the heating, plumbing, and electrical systems were virtually completely replaced.

About November 20, 1974, Ray Imel, president of Thirteenth Street Corporation, was in the building at a time when the nature and extent of the improvements were obvious. At no time, either before or after Imel's presence in the building, were notices of non–liability pursuant to § 38–22–105(2), C.R.S. 1973, served upon the individual lien claimants or posted on the premises.

Prior to completion of the remodeling, the project was terminated on January 3, 1975. The project was not completed until the property had been leased to another tenant at a time following the filing of the liens which are the subject of this action.

The trial court found that all the labor and materials for which liens had been filed were utilized in the construction of improvements securely attached to the building. The trial court also found that the tenant and all lien claimants contemplated that the improvements would be permanently installed and would remain a part of the building. Furthermore, the trial court found that removal of any of those improvements could be accomplished only by their virtual destruction.

## I. *Lien Validity*

Liens attach to property under § 38–22–105, C.R.S. 1973, when, within five days after he discovers the alteration or improvements on the property, the owner of the property in question fails to give notice in writing that his interest in the property shall not be subject to any lien. Thirteenth Street Corporation asserts that the trial court erred by failing to determine whether the landlord owned the improvements provided by the lien claimants. We disagree.

Thirteenth Street Corporation asserts that the mechanic's lien law is based upon the theory that the owner's interests sought to be charged with a lien may be so charged only if, in fact, he owns the improvements

which were made. In support of this proposition Thirteenth Street Corporation cites *Brannan Sand & Gravel Co. v. Santa Fe Land Improvement Co.,* 138 Colo. 314, 332 P.2d 892 (1958); *Stewart v. Talbott,* 58 Colo. 563, 146 P. 771 (1915); and *Milwaukee Gold Mining Co. v. Thompkins–Cristy Hardware Co.,* 26 Colo.App. 155, 141 P. 527 (1914).

In *Brannan Sand & Gravel Co.* a roadway traversed several distinct privately owned parcels of land. Plaintiff supplied materials and labor to pave that roadway and, upon failure of the general contractor to pay him, plaintiff sought to enforce full payment by asserting a lien against the land of one of the landowners. The court held that plaintiff was not entitled to a lien for the value of the improvements made upon the land of other individuals, and therefore the court allowed only a lien pro rata. *Stewart* was a case in which the tenants leased real estate for a term of ninety–nine years from the landlord. As part of the lease agreement, the tenants were required to construct a building, and the lease provided that the building should become the realty of the lessors. The lease, which was filed and recorded in the office of the county clerk and recorder, expressly provided that neither the lessee nor any person dealing through him could charge the land or any interest of the lessors with any mechanic's lien. In holding that the lessor's interest in the real estate could not be charged with a lien for the improvements upon the land, our Supreme Court was impressed by the fact that if the improvements increased the value of the freehold interest, such increase would not be realized for ninety–nine years, and thus the improvements were in reality for the benefit of the lessee. In *Milwaukee Gold Mining Co.,* the court denied the mechanic's lien against the real property, but did so because there was no evidence that the materialman at the time he furnished materials and supplies knew that the materials and supplies were to be used on the property sought to be liened.

These cases, however are inapplicable to the case at bar. Here, the improvements to the building were inextricably a part of the leased building. Thus, the structural changes to the building, although belonging to the tenant under the terms of the lease cannot be separated into distinct separate interests as was the case in *Brannan Sand & Gravel Co., supra.* Likewise, because the lease involved in the case at bar was not a long term lease as was the case of the ninety–nine year lease in *Stewart, supra,* we cannot say that the benefits from the improvements inured primarily to the tenant. Finally, because the materialmen not only supplied materials to the premises, but installed them as well, they knew which property the materials would improve.

Section 38–22–105, C.R.S. 1973, provides in pertinent part:

"Any building . . . and every structure or other improvement mentioned in this article, constructed, . . upon any land with the knowledge of the owner or reputed owner of such land, . . . shall be held to have been . . constructed . . . at the instance and request of such owner or person, including landlord or vendor, who by lease or contract has authorized such improvement . . . .

(2) Such interest so owned or claimed shall be subject to any lien given by the provisions of this article, unless such owner or person within five days after he has obtained notice of the . . . construction . . . gives notice that his interests shall not be subject to any lien . . . by posting and keeping posted a written printed notice . . . upon the building or other improvements situate thereon. . . ."

■ In order for a lien to attach to a particular person's interest in real estate under § 38–22–105, C.R.S. 1973, such person must have some ownership in the improvement constructed. *Stewart, supra.*

■ Relative to this issue, Thirteenth Street Corporation urges that by virtue of the terms of its lease with Kenyon–Megill, Inc., it lacked a property interest in the improvements and thus mechanics' liens

were not assertable thereon. However, the terms of the lease are not dispositive of the issue of ownership vis a vis the mechanics' lien statute.

As stated in *Horn v. Clark Hardware Co.*, 54 Colo. 522, 131 P. 405 (1913):

"The lessor and lessee might agree between themselves that the machinery could be removed by the latter when the lease expired, or was forfeited, or by reason of the relation between them it might be that, independent of any agreement, the machinery could be removed by the lessee on the happening of either of these events, and that as between them and the machinery, in determining their rights, would not be regarded as a fixture or part of the realty, but their private agreement, or the respective rights in the machinery by operation of law, would not change the character of this property, so far as the rights of third persons were concerned, who claimed a lien thereon as realty."

■ Given this proposition of law, and the policy of construing mechanics' lien laws in favor of lien claimants, *3190 Corp. v. Gould*, 163 Colo. 356, 431 P.2d 466 (1967), we conclude that the trial court did not err in determining that liens could be valid against Thirteenth Street Corporation, notwithstanding the fact that under the terms of the lease the tenant had the right to remove the improvements.

Here, the trial court found that the labor and materials for which the claims are now being made were used in the construction of improvements securely attached to the building, and that removal of any of these improvements could only be accomplished by their virtual destruction. Furthermore, the court found that the remodeling project had substantially improved the premises for the continued use as a restaurant and tavern. Upon these findings, then, we conclude that the trial court did not err in determining that these improvements could give rise to mechanics' liens. *Irrigation Co. v. Kamm*, 55 Colo. 440, 135 P. 766 (1913).

Thirteenth Street Corporation asserts that the trial court erred in concluding that

the knowledge requirement of § 38–22–105, C.R.S. 1973, means implied notice and that circumstances may exist such as to impute knowledge to the owner. We disagree.

■ The purpose of the knowledge provision of § 38–22–105, C.R.S. 1973, is to provide a lien for improvements when by the owner's seeming acquiescence through silence it would be inequitable to relieve his property from a lien for such improvements. *Grimm v. Yates*, 58 Colo. 268, 145 P. 696 (1915). Accordingly, contrary to the assertion of Thirteenth Street Corporation, § 38–22–105, C.R.S. 1973, requires only that the landlord have notice that materials or labor are being furnished to provide improvements to his property; he need not have actual knowledge that his interests will be subjected to mechanics' liens. *See Milwaukee Gold Mining Co., supra.*

■ Here, in light of the finding that the president of Thirteenth Street Corporation was in the building at a time when the nature and extent of the improvements were obvious, we conclude that the trial court did not err in determining that Thirteenth Street Corporation had knowledge sufficient to permit liens to attach under § 38–22–105, C.R.S. 1973.

Thirteenth Street Corporation next asserts that the trial court erred by failing to make a finding as to whether the lien claimants had an affirmative duty to investigate the authority of the tenant to contract for material and labor which would subject the landlord's interest to a lien. We disagree.

■ The Colorado Mechanic's Lien statutes are intended to provide protection for suppliers of material and labor, and thus, these statutes should be construed in favor of lien claimants. *3190 Corp., supra.* To require potential lien claimants to investigate the authority of the tenant to contract for the improvements he intends to provide to the property, and to deny him a lien on the property even when the owner of the property has knowledge of the improvements being made to this property would violate the principle stated in *3190 Corp.*

This we will not do, and therefore, we find this assertion of error to be without merit.

## II. *Bankruptcy Proceedings*

After this case was submitted to the trial court in July 1977, but prior to the court's ruling in November 1977, the landlord moved for a stay of proceedings pending resolution of bankruptcy proceedings brought by a successor tenant. Denial of this motion is asserted as error. We disagree.

■■■ Where the bankruptcy law deals with property rights which are regulated by the state law, federal courts in bankruptcy will follow the state court. *Board of Trade v. Johnson*, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924). Because the federal court will follow the state court's determination of property rights, we conclude that the trial court committed no error in denying the motion.

## III. *Interest*

The lien claimants asset that they are entitled to interest on their claims at the rate of 6% per annum from the dates their respective accounts became due until October 1, 1975, the effective date of § 38–22–101(5), C.R.S. 1973 (1978 Cum.Supp.), and at the rate of 12% per annum thereafter until satisfaction of the judgments. We disagree.

The controlling decision on this issue is *Weather Engineering & Manufacturing, Inc. v. Pinon Springs Condominiums Inc.*, 192 Colo. 495, 563 P.2d 346 (1977), a case in which the Supreme Court interpreted § 38–22–101(5), C.R.S. 1973 (1978 Cum.Supp.). In *Weather*, lien claims arose from labor and materials supplied prior to the effective date of the interest statute. Subsequent to the effective date, judgment was entered. The Supreme Court permitted interest to run at the rate of 6% from the date the claims arose until the date of judgment. This was in accordance with the general interest statute, § 5–12–102, C.R.S. 1973. From the date of judgment, however, the Supreme Court permitted interest at the rate of 12% as provided by § 38–22–101(5), C.R.S. 1973 (1978 Cum.Supp.).

■■■ A close reading of *Weather* reveals that the Supreme Court did not intend to preclude interest from accruing at the rate of 12% in all mechanics' lien cases. Rather, it meant to restrict interest recovery to be as established in the general interest statute, § 5–12–102, C.R.S. 1973 (1978 Cum. Supp.) in mechanics' lien cases in which the claim giving rise to interest accrual occurred before the 1975 effective date of the mechanics' lien interest provision. Because the materials and labor giving rise to interest in the case at bar were provided prior to the effective date of § 38–22–101(5), C.R.S. 1973 (1978 Cum.Supp.), we conclude that the trial court committed no error in its award of interest.

Furthermore, because the Supreme Court in *Weather, supra*, was emphatic in stating that § 38–22–101(5), C.R.S. 1973, (1978 Cum.Supp.) applied only in cases in which the provision of materials or labor was commenced after the effective date of the amendment, we conclude, contrary to the contention of lien claimant City Electric Company, that the trial court committed no error in awarding interest at the rate of 6% from December 30, 1974, to the date of judgment, and 12% interest thereafter, even though the tenant and the lien claimant (but not Thirteenth Street Corporation) contracted for a higher rate to apply.

Having disposed of the matter as we have, we do not reach the constitutional question raised by Thirteenth Street Corporation.

We have considered the other assertions of error raised, and have found them to be without merit.

The judgment is affirmed.

ENOCH, C. J., and STERNBERG, J., concur.